Good morning, Your Honors. I am the attorney for Petitioner, Mr. Zheng. Hold on just a second. You may start now. Go ahead. Good morning, Your Honors. I am the attorney for the Petitioner, in this case, Mr. Zheng. As I see it... You need to state your name. Oh, sorry. Alan Sampson. We just need it on the record. As I see it, the basic legal issue in this case is, how do you assess the religious faith of benighted believers? In particular, with reference to this case, how do you judicially recognize the parameters of religious faith in a rural Chinese environment? Can this Court consider the special deference given to an immigration judge's credibility finding on demeanor with regard to the asserted religious beliefs of petitioners who are rurally inarticulate but professing Christians? Petitioner... The I.J. seemed to, to her credit, recognize that very dilemma. And she, so as an antecedent question, would you, or part of your approach, how do, this isn't an I.J. who blew past the issue. She clearly got frustrated on the record for your client's long pauses and demeanor evidence. And then she went beyond that and recognized and addressed the issues that you have now raised. So how does the I.J. do it in a way that we, then, on appeal, can substitute our judgment for what the I.J. is trying to do? That's a very interesting question, Your Honor. I feel that the I.J.'s frustration with petitioner got in the way or interfered with a true and valid assessment of the petitioner's actual religious beliefs. It's painful to read the record. Not only were there sustained pauses in the petitioner's response, lasting a minute, two minutes at various points in his testimony. The I.J. correctly noted there were frequent staring at the ceiling. There was frequent hesitation in response. And indeed, the petitioner evinced a knowledge of only really one or two Bible stories. I, as the attorney and the judge, attempted to evince what Bible stories do you know? Can you tell what stories you know? The petitioner continually was able only to talk about creation. He was able to only say that Jesus was the Son of God. He didn't recognize any of the prophets. He apparently didn't know the names of the prophets. He continually repeated, forgive my plain words, as a mantra that the earth was created in one day. The immigration judge, in frustration, asked him, how can I believe? If you cannot give me the answer to this, how can I believe that you're a Christian? You haven't told me anything that will allow me to believe. I believe that petitioner tellingly responded in his own way, if I'm not telling the truth, I will surely go home and die. I think this is a gut response of a true believer. I think that in this particular case, the immigration judge's credibility finding was made not primarily on whether the petitioner had a reasonable fear of persecution, but rather, does he know his religion? And obviously, he didn't really know his religion very well. I am requesting, therefore, the court, this court, to evaluate the reasons given by the immigration judge that petitioner, who admittedly was a rural, inarticulate farmer, was not credible in his affirmation of being a Christian. The immigration judge issued an exceedingly limited demeanor finding of faith. Her credibility finding rested largely on petitioner's several hesitations and pauses, his pained expressions, his staring at the ceiling. I'm requesting the court to consider whether, in this particular case, possible limits can be placed on the special deference given to this immigration judge's credibility finding in a unique cultural situation. I just ask, before you launch into that large, albeit maybe focused on this immigration judge, point of law or point of deference or non-deference, my concern as reading through is that she does talk about the demeanor, and having learned as a trial attorney, there's some need to put on the record during the course of a proceeding what is really going on, because the cold record doesn't tell you. And so I read the transcript as her putting that on the record, and then she puts it in her decision. But then recognizing, as she says, that the point you're making about his rural and inarticulate status, she goes on then to ground her credibility finding on inconsistencies. So she does go into those. So maybe in your inviting us to go into whatever deference we give, you could address those inconsistencies. She does indeed go into inconsistencies, Your Honor, but I believe these consistencies are really on tangential matters. If Petitioner, in particular, one inconsistency is when Petitioner received his first Bible, how long he went to church. I would respectfully suggest that if Petitioner is unable to answer anything about the Bible except the world was created in seven days, and if he was also unable to remember after two minutes the date of his birth or how old he was, it is not surprising that he would have difficulty in remembering when he received his first Bible. I think all of this is part of a sustained pattern. His lack of education, his perhaps low IQ, his lack of sophistication, but his belief. He was consistent in his hesitancy with regard to his testimony in front of, pardon me, with regard to his talking in front of the asylum officer at his interview. The asylum officer also commented that he hesitated. I believe that this hesitation is not a lack, does not indicate a lack of credibility, but a lack of religious belief. If he would have wanted to protect himself, he certainly, in the intervening months between his hearing in front of the immigration judge and his interview with the asylum officer, he certainly could have learned one or two additional Bible stories. I was attempting to prompt him. The judge was attempting to prompt him. He simply was unpromptable. All he could say was, if I don't, if I'm not telling the truth, I'm going to go home and die. That could have been an expression of well-founded fear, too. Yes, it is. Of persecution. I believe that is the case, Your Honor. I believe that the immigration judge's credibility finding was made not primarily on whether Petitioner had a reasonable fear of persecution, but rather does he know his religion. And he doesn't know his religion. Mr. Sampson, I wanted to ask you about the subpoena that you tried to introduce. Why didn't you have it authenticated? I attempted to, Your Honor, but it's exceedingly difficult to get these subpoenas authenticated. They come from a largely rural village council. I've had numerous Chinese cases, not only on religion, but on one-child policy. And in several years, I've never really been able to successfully get a subpoena authenticated. Well, is there no alternative way to get a court document? I can see the problem. If the corroborating ---- Pardon me. I can see the problem if you have to go back to a Chinese court to get an authentication. But are you just hopelessly stuck then? Well, if the corroborating evidence is weak or nonexistent, then as the immigration judge noted, you go with the petitioner's testimony. But is there no remedy you have on the ---- to get a subpoena in where you can't go back to the source? Did you address that problem at all? Well, I did not address that problem, Your Honor. I'm just wondering whether a petitioner was able or was unable to have me fly to China to seek the bona fides of a subpoena. No, you can't get it there, but I'm just wondering whether you're ---- whether it's so hopeless. Maybe it is. I'm just asking you if you'll practice in this field. I'm presented with the problem, Your Honor. I have come up with no solution. In cases of this where the corroborating evidence is weak, the petitioner's testimony is usually what's primarily relied upon. And I think a perusal of his testimony certainly indicates the relatively rural and unsophisticated background from which he comes. The Bible stories he knows, that is, the creation and Jesus was the Son of God, are not likely ---- He knows about the resurrection. He knows about the redemption. He knows about Jesus rising. He knows a little bit more than you credit him with. He couldn't answer any more, Your Honor. His knowledge was simply not Jesuitical in scope. There's some big ideas, Christian ideas, that you don't even recognize yourself in repeating his beliefs. You've sold him a bit short in saying what he testifies to. Well, after several minutes of hesitation, Your Honor, and the judge being exceedingly frustrated on numerous occasions, I felt that it was difficult to go any further. He simply was ---- But you come in here and tell us a rather abbreviated set of his actual testimony as to his beliefs. It's rather strange. I think a review of the record, Your Honor, will indicate the full scope of his actual beliefs. I think you do him injustice. Well, do that as it may. I feel that he's really no more, no less a product of his own environment, an environment which is reflected in the rudimentary nature of his testimony. The fact that he knew little about basic points of Christian belief, I feel, has no purchase on the larger issue of whether he's a Christian and whether ---- I think he had the main Christian beliefs and said so. I think so, too, Your Honor, and that's what I'm trying here to convince. I apologize for my own shortcomings. It doesn't begin with creation. Apparently convince Judge Newman. I think he's trying to help you. I apologize for my own shortcomings in eliciting from him in front of the immigration judge. Well, they're in the record if you read it. Yes. Your time has expired. Thank you. I'll give you a couple minutes. Thank you. Just one last thing. I feel that benighted Christians are no less believers than clerics and peasants are no less religious than prelates. Thank you. Thank you. Good morning, Your Honors. Ari Nazaroff representing the government. Petitioner this morning wants you to reweigh the evidence, but that's not the standard. The standard isn't whether you can believe the Petitioner. The standard is whether you must believe the Petitioner. And in this case, the record in appeal clearly supports the demeanor finding. Long pauses before he answers, staring at the ceilings, trying to remember. Now, not only one adjudicator, two adjudicators, both the asylum officer and the I.J. had the same conclusion as far as demeanor. But even if you don't look at the demeanor, let's put that aside for a minute. Petitioner argued this morning, well, he's from a small rural village. But even if he's from a small rural village, maybe he doesn't know Christianity that well, but he can still testify consistently. And in this case, Petitioner did not testify consistently, and I.J.'s finding was the decision was mostly based on inconsistencies, and there are inconsistencies on many. Four stories of how he came to possess a Bible. First, he says he had it as a child. Then he says it was given to him in 1977, so then he would have been approximately 10 years old by his pastor. Then he says he first got it in 1994 when he was baptized. Finally, he says the asylum officer – finally, he told the asylum officer he had never had a Bible. As far as testimony regarding his own age, I mean, isn't that more consistent with illiteracy? I mean, are you equally consistent with illiteracy in general as opposed to lying about his religion? I'm sorry, Your Honor. He said, you know, in response to other questions, he exhibited the same response, and he could barely tell his own age or what he was, how old he was at a certain date, which means that he just couldn't do simple math. With a fifth-grade education, barely literate in a foreign language, isn't it equally plausible that all of the difficulties you're highlighting are consistent with illiteracy as opposed to lying about his religion? Well, but simple things – fine, even if you couldn't calculate his own age, you would know who gave him a Bible. Was it his first Bible? Was it his parents? His pastor? Did he ever have one? I mean, you really don't need an education to be able to respond to something like that. Or, for example, the two stories he talks about regarding his wife's encounter with the police. First, he says in the same hearing that, well, first, after he had been imprisoned and he left the country, the police came, talked to his wife. That's how he knows that they came, and they imprisoned her and asked questions about him. Then he says that she left before the police ever came. I mean, again, yet again, that's not something you really need in education to get that story consistent. So nothing in the record, Your Honors, compels reversal for the reasons stated in the Petition for Review to be dismissed. Thank you, Your Honor. All I would respond to the issue of his inconsistencies on virtually everything is that Gogol talked about the concept of the blessed fool. I believe this is such a concept. Thank you. Thank you, counsel. The case is heard and will be submitted. Proceed to the next case in the argument calendar, Hasabi v. Ashcroft.
judges: Noonan, Thomas, Fisher